# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN MCKINLEY BEESON, | ) | |
| | ) | |
| Petitioner, pro se, | ) | **MEMORANDUM OPINION,** |
| | ) | **ORDER, AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | 1:09CV152 |
| | ) | 1:05CR315-2 |
| Respondent. | ) | |

Petitioner John McKinley Beeson, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 137).[1] Petitioner was indicted in a superseding indictment on theft of firearms from a business licensed to deal firearms in violation of 18 U.S.C. § 922(u), conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C), maintaining a place for the purpose of manufacturing, distributing, and using oxycodone and marijuana in violation of 21 U.S.C. § 856(a)(1) and (b), distribution of approximately ten dosage units of oxycodone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), carrying and brandishing a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (c)(1)(C)(I), possession with intent to distribute approximately 3,833 dosage units of oxycodone in violation of 21 U.S.C.

---

[1] This and all further cites to the record are to the criminal case.

§ 841(a)(1) and (b)(1)(C), possession with intent to distribute approximately 72 marijuana plants in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of firearms in violation of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (c)(1)(C)(I), and possession of stolen firearms in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (docket no. 38). Petitioner proceeded to trial, but, just after jury selection, he decided to enter a guilty plea. Petitioner then pled guilty to conspiracy to distribute oxycodone, distribution of ten dosage units of oxycodone, brandishing firearms during a drug trafficking crime, and possession of stolen firearms (docket nos. 81, 82). He was sentenced to 151-months imprisonment for the conspiracy and distribution charges, a consecutive 84-months imprisonment for the brandishing charge, and a concurrent 120-months imprisonment for the possession of stolen firearms charge; a total of 235-months imprisonment (docket no. 109). Petitioner did pursue a direct appeal, but the appeal was dismissed (docket no. 131).

Petitioner next filed his motion under Section 2255. Petitioner also sought, and received, permission to file a supporting memorandum (docket nos. 141, 142). He instead filed a motion to amend his 2255 motion (docket no. 152), which was granted (docket no. 153). He then filed his supporting memorandum (docket nos. 155, 161) and a motion to file sworn declarations (docket no. 158).[2] This was followed by yet another supporting memorandum (docket no. 161). Respondent filed

---

[2] That motion is still pending and will be granted.

a response (docket no. 175), and Petitioner replied (docket no. 181). The reply exceeded the applicable page limit, but Petitioner did file a motion seeking permission to file it. The motion to exceed the page limitation was stricken as deficient (docket no. 182), as was a subsequent attempt to challenge that decision (docket nos. 183, 184). Petitioner has now filed motions again seeking to challenge that decision and to refile his motion to exceed the page limitations (docket nos. 185, 186). Rather than prolong this litigation further, and because it makes no difference in any event, the court will simply consider the reply as filed and deny Petitioner's latest motions for being moot.

## PETITIONER'S CLAIMS

Petitioner lists four claims for relief. The first of these states that Petitioner's guilty plea was unlawfully induced and not knowingly or voluntarily made with a full understanding of the nature of the charges and the consequences of the plea. Petitioner alleges that the presiding judge impermissibly ordered the parties to alter the plea agreement they had reached. He also claims that his attorney incorrectly advised him of the consequences of his guilty plea. Finally, Petitioner asserts that he did not understand the elements of his drug charges and his Section 924(c) charge.

Petitioner's second claim argues that his conviction was based on evidence that was unconstitutionally seized after his vehicle was stopped without probable cause.

The third claim contends that the prosecution failed to disclose evidence favorable to Petitioner and that it relied on evidence that was improperly gathered by government agents.

Finally, Petitioner's fourth claim for relief, as amended, states that Petitioner was denied effective assistance of counsel in numerous ways.

## DISCUSSION

## Claim One

Petitioner's first claim alleges that his guilty plea was not knowingly and voluntarily entered. "When a defendant is represented by counsel when making his guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. In order to rebut that strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent." *United States v. Custis*, 988 F.2d 1355, 1363 (4th Cir. 1993) (citations omitted). "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996) (citations and internal quotation marks omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily

relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4ᵗʰ Cir. 2005).

Here, Petitioner was thoroughly and properly examined in a Rule 11 colloquy by the judge who accepted his guilty plea. He makes several allegations as to why his guilty plea should be found invalid, but none have merit.

Petitioner's first allegation is that the judge who accepted his plea ordered the parties to alter the terms of the plea agreement that they had reached. This allegation, as demonstrated by the transcript of Petitioner's plea hearing, is patently false. Early in the plea hearing, it became evident that the copy of the plea agreement that had been provided to the judge was incorrect in that it did not accurately reflect the agreement of the parties. Instead, it was a copy of an earlier proposed plea agreement (docket no. 123 at 5-6). The earlier proposed plea agreement contained a promise by the government to seek a third level of sentence reduction for acceptance of responsibility under the United States Sentencing Guidelines (USSG) if Petitioner was found to be entitled to two levels of reduction. The final agreement did not contain that provision. Also, the earlier draft did not contain a waiver of most of Petitioner's appellate and collateral review rights. The final agreement did contain such a waiver. Finally, the early draft reserved Petitioner's right to appeal the denial of a motion to suppress that he had filed earlier in the case. The final agreement did not reserve that right (*id.* at 7-8).

Once it came to light that the presiding judge possessed a copy of an incorrect agreement, the judge instructed defense counsel to mark the agreement in the manner that "you and your client agreed to" and to initial the changes (*id.* at 8-9). In no way did the judge negotiate or dictate any of the terms of the agreement. He simply took the steps necessary to see that the agreement entered into the record accurately reflected the agreement reached by the parties. He then used that copy to accept Petitioner's plea (*id.* at 9). All of the changes were discussed in open court in front of Petitioner, and he initialed the changes (docket no. 82 ¶¶ 1, 5b, 5c, 5d). His contention that the judge who accepted the plea altered or dictated the terms is frivolous.

Petitioner's next allegation is that his guilty plea is invalid because his attorney incorrectly told him: (1) that his plea agreement preserved his right to appeal the denial of the motion to suppress, (2) that he faced only a nine-to-eleven year sentence after his plea, (3) that the plea agreement required the government to recommend a third level of reduction under the USSG if Petitioner was eligible for a two-level reduction for acceptance of responsibility, and (4) that he would only be sentenced based upon ten dosage units of oxycodone and the consecutive gun charge under 924(c). Petitioner does not allege any error by the court or a deficiency in the plea process as to these allegations. Instead, his contentions are really claims that ineffective assistance of counsel led to his invalid guilty plea.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Here, taking even Petitioner's allegations of misadvice at face value,[3] he cannot establish the necessary prejudice because of the nature of the plea hearing that was conducted. It was discussed in open court during the change of plea hearing that Petitioner was not reserving the right to challenge the ruling on the suppression motion (docket no. 123 at 5, 7-8), that the government would not be recommending a third level of reduction for acceptance of responsibility (*id.* at 5-7), that it was not likely that Petitioner would even receive a two-level reduction (*id.* at 7), and that Petitioner could be held responsible at sentencing for conduct beyond that charged in the counts of conviction, including dismissed counts (*id.* at 10). This was discussed in front of him, and he initialed changes in the plea agreement consistent with all of this except for inclusion of relevant conduct at sentencing. That point and the potential length of his sentence were set out in the plea agreement, but not in the language he initialed (docket no. 82, ¶¶ 2, 6).

Not only were these points set out in the plea agreement and discussed in front of Petitioner, but some of them were specifically discussed with him during the plea hearing. His attorney asked him "John, do you understand that the Government is making no promise with regard to acceptance of responsibility or any reduction, and because of that . . . that is a matter within the . . . discretion of the Court?" (Docket No. 123 at 7.) Petitioner replied, "Yes, I understand." (*Id.*) Petitioner was

---

[3]This is not to say that the attorney actually gave the poor advice alleged by Petitioner, only that no finding on that point is necessary. The court is only assuming the truth of the allegations for the purpose of deciding Petitioner's 2255 motion.

later placed under oath and warned that a failure to answer truthfully could result in perjury charges (*id.* at 11-12). He stated that he had all of the time that he needed to speak with his attorney concerning the plea agreement, that he was satisfied with his attorney's representation, and that he needed no more time to speak with him about the agreement before proceeding (*id.* at 13-15). He specifically agreed that, in exchange for the dismissal of a second 924(c) charge,[4] he was giving up all of his appeal rights except for issues of prosecutorial misconduct, ineffective assistance of counsel, a sentence above the maximum allowable sentence, or a sentence based on race, creed, color, national origin, or another unconstitutional characteristic. He was, in fact, asked "So, there are four grounds left after this agreement. Do you understand that?" (*Id.* at 16.) He replied, "Yes, sir." (*Id.*) Petitioner was also warned of the maximum sentences that he faced, which were up to 20 years for the conspiracy and distribution counts, a consecutive 7 years for the 924(c) count, and 10 years for the stolen firearms count (*id.* at 18-19). Petitioner stated that he understood these penalties (*id.* at 19). It was then explained to Petitioner that his sentence would be determined under the Guidelines and that no one could know at that time, even his attorney, what the exact sentence would be. The judge added that "[a]ll we can say is that it has got to be within the limits of the

---

[4] This charge would have carried another consecutive 20-year sentence. In other words, had Petitioner gone to trial and lost on all counts, he would have received at least his current sentence plus another 240 months of imprisonment, bringing his total to nearly 40 years of imprisonment.

maximum" (*id.* at 20). Petitioner agreed that he understood this and that he knew that conduct related to dismissed counts could be considered in determining his sentence under the USSG (*id.* at 20-21).

All of the matters about which Petitioner claims his attorney misadvised him were clearly and thoroughly explained to him at sentencing. He raised no questions and, in each instance, stated or agreed that he understood what was happening. Further, Petitioner is a person who obtained a high school education and performed well enough to gain admission to college. He also answered appropriately at his plea hearing and demonstrated at sentencing the ability to perform research and understand his situation (docket no. 124 at 39-43). At all times in litigating his 2255 motion, he has displayed intelligence and a capacity to understand all of the proceedings. Petitioner frequently portrays himself in his pleadings as a young person with a limited understanding of the court system whose attorney took advantage of him in persuading him to plead guilty. The very clear record in the case, however, along with Petitioner's educational background and conduct before the court, paint a different picture. Whatever Petitioner's attorney did or did not tell him, Petitioner was correctly and thoroughly advised by the presiding judge on all relevant matters. It is obvious from the record and his sworn statements in that record that he fully understood his plea agreement and the penalties he faced. Yet, he pled guilty anyway. He has not demonstrated either prejudice from his attorney's alleged actions or the existence of "extraordinary circumstances" which would cause

the court to disregard his statements during the Rule 11 colloquy. His claim that his plea was invalid due to bad advice from his attorney should be denied.

Finally, Petitioner claims that his plea was invalid because he did not understand the elements of his drug charges and 924(c) charge. As with the facts supporting Petitioner's other claims, the elements of the charges were given to Petitioner at his change of plea hearing. Petitioner attempts to combat this by minimizing his involvement in the drug dealing operation and by stating repeatedly that he never actually provided pills to anyone. His current arguments are based on a basic misunderstanding of the law. As he was plainly told at the time of his guilty plea, all that was required for him to be guilty of conspiracy to possess oxycodone with intent to distribute was an agreement to help facilitate its distribution (docket no. 123 at 24-25). It was not necessary for him to have ever actually possessed or distributed a single pill. Instead, the government would have had to prove only that he helped those who were distributing the pills in some way.

Petitioner admits even in his current pleadings that he was frequently present at the home of co-defendant William Davis, whom he knew to be a pill distributor. He claims that Davis "used" him by providing him pills for personal use in return for "small tasks" such as accompanying him while he "straightened out his business," cleaning his guns, storing firearms, and helping Davis's wife "sort some pills after" they were stolen in robberies (docket no. 155 at 14). He also helped in an attempt to remove all of the drugs and guns from Davis's house after Davis was arrested.

(docket no. 155 at 18-19). Petitioner previously admitted to the police that he knowingly moved stolen pills out of Davis's house to keep the police from finding them (docket no. 175, attachs. A, B). However minor Petitioner sees his actions as having been and however little he was paid in return for his help, he cannot evade the fact his actions aided Davis's drug distribution operation. By his own current admissions, he was guilty of being part of a drug distribution conspiracy even if he never personally distributed a single pill and was never paid a cent of cash. Any misunderstanding of the elements of the conspiracy charge and their application occurred during his time in prison, not at the time of his plea. He correctly understood them then and, given his admitted involvement in Davis's operation, understandably pled guilty.

The same is true for the distribution count and 924(c) count. Petitioner was advised at his change of plea hearing that the Government had to prove that he participated or helped distribute oxycodone. He was also advised that he could be treated as a principal actor even if he only aided or abetted the distribution (docket no. 123 at 25). Finally, as to the 924 (c) count, he was advised that the government could show either that he actually possessed and brandished a weapon during and in relation to a drug crime or participated in an act that brought the brandishing about (*id.* at 26). Petitioner stated that he understood these elements.

The facts behind both these charges stem from the same events. The government alleged that Petitioner brandished a firearm and pointed it at a drug

buyer while Davis searched the buyer to see if he was wearing a wire. Davis then sold the man approximately ten oxycodone pills (docket no. 38 at 5, 8; docket no. 81 at 3). Petitioner describes this incident as a "prank" devised by Davis to recreate a scene in a movie that Davis had recently watched. He does state that the "prank" was done to "scare him (the buyer)." (Docket No. 155 at 28.) Multiple witnesses, including the frightened buyer, stated that Petitioner held a firearm during the incident (docket no. 156 at 28, 37, 50). Petitioner's own current account is silent on this point (docket no. 138 ¶¶ 24-28). He states only that several persons agreed to hold firearms and that he was very high and sitting on the couch during the incident (*id.*).

Petitioner again seeks to minimize the conduct in which he was involved. Nevertheless, he still cannot escape the fact that a drug deal took place, that a search for a wire was part of the transaction, and that he was a participant. It does not matter whether or not there was really a search for a wire or whether the search was done simply to "scare" the buyer or recreate a scene from a movie. It also does not matter that he did not personally give any pills to the buyer or that the actual drug transaction occurred outside his presence. He was a participant and, as such, an aider or abettor. He was advised correctly on this point by the judge and understood it at the time of his plea. He again fails to show that his plea was involuntary or unknowing. His entire first claim for relief should be denied.

**Claim Two**

Petitioner's second claim for relief argues that his conviction was invalid because the case against him was based partly on an illegal search and seizure. As noted, Petitioner agreed in his plea agreement that he was giving up all of his appeal rights except for claims based on prosecutorial misconduct, ineffective assistance of counsel, a sentence above the maximum allowable sentence, or a sentence based on race, creed, color, national origin, or another unconstitutional characteristic. This waiver also extended to challenges seeking post-conviction relief, "including any proceeding under Title 28, United States Code, Section 2255" (docket no. 82, ¶ 5c). Such waivers are enforceable if a claim is within the scope of the waiver and the waiver is knowing and intelligent. *Lemaster*, 403 F.3d at 220. Here, this claim is clearly within the scope of the waiver. It does not fall into any of the four exceptions just listed. More important, the earlier version of the plea agreement listed this claim as a fifth exception. That language was taken out in the final version in a change initialed by Petitioner (*id.*). Also, the waiver was knowingly and intelligently entered. Petitioner was informed of the waiver exceptions during his change of plea hearing as discussed above. He was also informed by the language of the plea agreement and again at that hearing that it extended to 2255 motions (docket no. 123 at 15-16). Petitioner acknowledged that he understood the waiver provision (*id.*). Also, as noted, he was entirely capable of understanding and

appreciating the consequences of the waiver.  This claim should be denied based on the application of the waiver.

## Claim Three

Petitioner's third claim alleges prosecutorial misconduct based on the withholding of information that would have been helpful to the defense.  Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Kyles v. Whitley*, 514 U.S. 419, 431 (1995).  Evidence is "favorable" both when it would tend to exculpate the accused and when it can be used to impeach government witnesses.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  Nevertheless, where the prosecution fails to disclose evidence favorable to the accused, such evidence is material "only where there exists a 'reasonable probability' that had the evidence been disclosed the result of the [proceeding] would have been different."  *Kyles*, 514 U.S. at 434.  A "reasonable probability" of a different result is shown when the government's failure to disclose evidence "undermines confidence in the outcome of the [proceeding]."  *Kyles*, 514 U.S. at 434 (citing *Bagley*, 473 U.S. at 668).

Petitioner's pleading and briefing of this claim is difficult to decipher.  It is better described as an amalgamation of accusations than one claim for relief.  At times, Petitioner appears to be claiming that Respondent's case was based upon

insufficient evidence, false statements by certain witnesses, or a deficient presentation of evidence to the grand jury. To the extent that this is so, any such errors were waived by Petitioner's guilty plea. This is because a valid guilty plea waives all prior, non-jurisdictional defects. *See Tollett v. Henderson*, 411 U.S. 258 (1973).

At other times, Petitioner focuses on allegations related to one of the dismissed counts in the indictment. He claims that Respondent knew of alibi witnesses that supported his innocence as to that count. Given that the count was dismissed, it is not clear how Petitioner has suffered any prejudice or could base a claim on this count.

Finally, Petitioner repeatedly makes accusations that Respondent withheld rough notes or witnesses statements helpful to him. He does not specifically identify these statements or demonstrate how they would have helped his defense. More important, he does not appear to claim that the information was still being withheld at the time of his plea, but he instead focuses more on the time of his indictment by the grand jury. He has shown no right to the documents at that point in time. Also, many of Petitioner's allegations that documents show that witnesses "lied" really only point to problems or inconsistency with certain witness statements. Such problems do not indicate misconduct by Respondent, but they would have instead been points that his attorney could have brought out at trial on cross-examination of the witnesses. Petitioner knowingly and voluntarily waived his right to trial and his right

to cross-examine witnesses with his guilty plea. He has not demonstrated that any of the documents he now provides to the court were not available to him or his attorney at the time of his plea. Whatever the true nature of Petitioner's third claim for relief, it should be denied.

## Claim Four

Petitioner's fourth, and final, claim is one for ineffective assistance of counsel. He argues that his attorney: (1) improperly advised him to plead guilty to crimes that he did not commit, (2) did not hold the government to its burden of proof by advising Petitioner that he should go to trial, (3) did not properly investigate the case to discover that Petitioner was not part of any conspiracy, but was only a drug addict accepting pills from Davis, (4) failed to discover that government witnesses' stories were inconsistent and subject to impeachment, (5) did not obtain discovery material "prepared by the State Narcotics Agent in connection to the investigation that led to Beeson's Federal Indictment," (6) promised Petitioner a nine-to-eleven year sentence through a guilty plea that resulted in an almost twenty-year sentence, (7) improperly advised Petitioner to plead guilty instead of proceeding to trial, (8) failed to raise a "physical necessity" defense, (9) failed to argue at sentencing that Petitioner's 924(c) sentence should have run concurrently with his other sentences, and (10) did not object to the drug quantities determined at sentencing. Again, Petitioner must show both error by his attorney and prejudice in order to prevail on any of these allegations.

Petitioner's first, second, and seventh allegation are all permutations of the same basic allegation, which is that counsel advised Petitioner to plead guilty when he should have advised him to go to trial.  Counsel's advice to Petitioner was a strategic decision made during the course of the case.  When deciding an ineffective assistance of counsel claim, this court must give deference to strategic decisions. *See Strickland*, 466 U.S. at 690-91.  Counsel stated at sentencing that the decision to advise Petitioner to plead guilty was not an easy one given the lengthy sentence Petitioner faced (docket no. 124 at 36).  Nevertheless, he indicated that a combination of the fact that the jury would have been told that Petitioner was involved in the beheading of a customer's dogs and the possibility of conviction on the second 924(c) count caused him to advise Petitioner to plead guilty (*id.* at 35, 36).  To be sure these are valid concerns for counsel to have had.

Added to the difficulties just mentioned, is the fact that, as noted, even Petitioner's current admissions would likely be sufficient for him to be found guilty of the conspiracy, distribution, and firearm charges.  His contentions otherwise appear to be based on a current lack of understanding of how little participation it would have taken for him to be convicted.  This means that, at best, he would likely have received the same sentence as he received after pleading guilty if he had gone to trial.  At worst, he would also have been convicted of the other charges, including the other 924(c) count with its consecutive 20-year sentence.  In other words, it appears Petitioner had little or nothing to lose by pleading guilty and much to lose by going

to trial. Counsel's strategic choice to advise Petitioner to plead guilty in those circumstances cannot be said to fall below the reasonable standard of representation for defense attorneys. Petitioner also cannot show that he was prejudiced by the advice. These ineffective assistance of counsel claims fail for those reasons.

Petitioner's next allegation is that his attorney did not sufficiently investigate the case to discover that he was simply a pill addict accepting pills from Davis and not part of any conspiracy. This is incorrect and untrue. It is incorrect because, as discussed above, Petitioner was not merely an addict accepting pills. He aided Davis's drug conspiracy in several ways and, therefore, was part of the conspiracy. Further, counsel was well aware of Petitioner's addiction to pills and its role in his actions. He argued at length in more than one context at sentencing that Petitioner's sentence should be lowered based on that fact (*id.* at 5-19, 33-37). The argument failed to carry the day, but not because counsel was not aware of the argument or did not raise it. Petitioner can show neither error nor prejudice as to this claim.

Petitioner's fourth and fifth allegation are that counsel did not discover that witness statements from government witnesses were subject to impeachment and that he did not request discovery materials from state authorities. In large part, this claim is conclusory. Petitioner does not specifically identify the documents or witnesses involved. He also states at times that he and counsel did review witness statements obtained in discovery and some "Reports of Investigation" (docket no.

156, Petitioner's Second Sworn Declaration, ¶¶ 6, 7) and that counsel possessed "Reports of Investigation" (docket no 161 at 18).  Most important, Petitioner does not show that any information not requested or considered by his attorney would have created the reasonable possibility of a different result in the case.  This claim should be denied.

Petitioner's sixth contention that his attorney failed him is another reference to his claim that his attorney told him he would receive a sentence of between 9 and 11 years if he pled guilty.  As noted, the court is not finding that the alleged misadvice occurred; however, if it did, it did not amount to ineffective assistance of counsel for the reasons set out.

Petitioner's next remaining allegation, his eighth, is that his attorney failed him by not raising a "physical necessity" defense.  Petitioner claims that his addiction to prescription pills and his need for those pills drove him to follow Davis's commands and commit the acts that led to his federal charges.  "'Traditionally, courts have applied the necessity defense when the actor's choices were dictated by physical forces beyond the actor's control, . . . and have considered the defense of necessity when . . . the defendant assertedly acted in the interest of the general welfare.'" *United States v. Griffin*, 909 F.2d 1222, 1224 (8th Cir. 1990) (quoting *United States v. Dorrell*, 758 F.2d 427, 430 n. 2 (9th Cir.1985)).  "'The theory of necessity is that the defendant's free will was properly exercised to achieve the greater good[.]'"  *Id.* (quoting *United States v. Contento-Pachon*, 723 F.2d 691, 695 (9th Cir.1984)).  In no

way was Petitioner acting "in the interest of the general welfare." By aiding Davis in return for pills, Petitioner engaged in acts that were detrimental to society generally and even to himself. As he recognized at sentencing, his actions caused him great harm (docket no. 124 at 39-41). The same is likely true, to greater and lesser degrees, of everyone affected by Davis's drug dealing operation--an operation which Petitioner participated in to some extent. There were no grounds upon which Petitioner's attorney could have based any necessity defense. This claim easily fails.

Petitioner's ninth claim is no better. Petitioner contends that his attorney should have argued that his 924(c) sentence not be consecutive to his other sentences. This argument would have been contrary to binding precedent from the Fourth Circuit Court of Appeals. *See United States v. Studifin*, 240 F.3d 415 (4th Cir. 2001). It is true that other circuits once took a different approach. *See, e.g., United States v. Whitley*, 529 F.3d 150 (2[d] Cir. 2008). Be that as it may, however, the United States Supreme Court recently ruled that the Fourth Circuit's approach, i.e., consecutive sentences for 924(c) convictions, was correct. *Abbott v. United States*, ___ U.S. ___, 131 S. Ct. 18 (2010). The argument was never available to Petitioner's counsel, and Petitioner could not have been prejudiced by any failure to raise it.

Finally, Petitioner asserts that his attorney failed to contest the amount of drugs attributed to him at sentencing. This is simply untrue. His attorney filed a

specific objection regarding the drug amounts attributed to Petitioner and argued them at length at sentencing (docket no. 124 at 7-19). In fact, he argued that Petitioner should be held accountable for only the amount of drugs involved in the distribution count to which he pled guilty (*id.* at 13). He lost the argument, but that does not amount to ineffective assistance of counsel. Petitioner believes that counsel should have further argued that he was not involved in at least one of the drug store robberies and should have had the drugs tested at laboratories to make sure the government's analysis of the drugs was correct. Petitioner has produced nothing to show that this argument would have been more effective than the one made by counsel or that any further laboratory analysis would have been beneficial to his defense. His claim is really one based on speculation and supposition. It should be rejected along with all of Petitioner's other claims.

**IT IS THEREFORE ORDERED** that Petitioner's motion to file sworn declarations (docket no. 158) is **GRANTED** and that Petitioner's motions to appeal and motion to refile (docket nos. 185, 186) are **DENIED** for being moot.

**IT IS RECOMMENDED** that Petitioner's motion to vacate, set aside or correct sentence (docket no. 137) be **DENIED** and that judgment be entered dismissing this action.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, N.C.
February 8, 2011